UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

BEFORE THE HONORABLE STACEY G. JERNIGAN, JUDGE

IN RE:                          )
                                )
RICIA ANN DANIELS               ) Case No. 15-32067-SGJ-7
OLAJUWON AKINOLA                ) Case No. 15-33290-SGJ-7
JARICIA GWENDOLYN DANIELS       ) Case No. 15-33340-SGJ-7
                                )
         Individual Debtors.    )
_____) August 25, 2015
_____) Dallas, Texas


Hearing on:  The Court's Status Conference


<u>Appearances</u>:

Debtor:                 Jaricia Gwendolyn Daniels, *pro se*

Debtor:                 Ricia Ann Daniels, *pro se*

For Creditor DeLayne    Robert Eldrige Bone, Esq.
Apartments LLC:         O'Conor Mason & Bone, P.C.
                        1616 South Voss, Suite 200
                        Houston, Texas   77057

For Creditor Icon       Daniel Paz, Esq.
Tower, LP:              Higier Allen & Lautin, P.C.
                        The Tower at Cityplace
                        2711 North Haskell Avenue, Suite 2400
                        Dallas, Texas   75204

Trustee in the          Scott M. Seidel, Esq.
Akinola case (via       Seidel Law Firm
telephone):             6505 West Park Boulevard, Suite 306
                        Plano, Texas   75093


Appearances continued on next page.

2

Appearances continued:

| | |
|---|---|
| From the Office of<br>the U.S. Trustee: | Mary Fran Durham, Attorney<br>U.S. Department of Justice<br>Office of the U.S. Trustee, Region 6<br>1100 Commerce Street, Room 976<br>Dallas, Texas  75242-1496 |
| Chapter 7 Trustee in<br>the Jaricia Daniels<br>case: | Jim Cunningham, Esq.<br>James W. Cunningham & Associates, Inc.<br>6412 Sondra Drive<br>Dallas, Texas  75214-3451 |
| From the Tax<br>Division, Southwest<br>Section: | Joe Pitzinger, Attorney<br>U.S. Department of Justice<br>717 North Harwood, Suite 400<br>Dallas, Texas  75201 |
| Digital Court<br>Reporter: | United States Bankruptcy Court<br>Northern District of Texas<br>Cathy Ecker, Judicial Support Specialist<br>Earle Cabell Building, U.S. Courthouse<br>1100 Commerce Street, Room 1254<br>Dallas, Texas  75242<br>(214) 753-2065, direct; 753-2072, fax |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California  95336-9124<br>(800) 665-6251 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

3

<u>I N D E X</u>

Witnesses:

|  | Direct | Cross | Redirect |
|---|---|---|---|

Ricia Daniels

 By Ms. Durham:          30, 35


Brad Perdue

  By Ms. Durham:          38

*Status Conference*                                                                 4

1    <u>Tuesday, August 25, 2015</u>                    <u>1:58 o'clock p.m.</u>

2                       P R O C E E D I N G S

3         THE COURT:  All right.  We now have three related

4    cases in which the Court has set a status conference.  These are

5    the Ricia Daniels case, Olajuwon Akinola, and Jaricia Daniels,

6    Case Number 15-32067, 15-33290, 15-33340.  Let's get appearances

7    from all parties-in-interest in these three cases, please.

8         MS. RICIA DANIELS:  All right.  My name is Ricia

9    Daniels.

10        THE COURT:  Ricia Daniels?

11        MS. RICIA DANIELS:  Yes, ma'am.

12        THE COURT:  Okay.

13        MS. RICIA DANIELS:  And this is Jaricia Daniels.

14   Um-hum.

15        THE COURT:  Okay.  I'll need both of you to appear.

16        Your name?

17        MR. SEIDEL:  Your Honor, Scott Seidel.  I'm the

18   trustee —

19        MS. JARICIA DANIELS:  Jaricia Daniels.

20        MR. SEIDEL:  — in the Akinola —

21        THE COURT:  Jaricia Daniels?

22        MS. JARICIA DANIELS:  Yes.

23        THE COURT:  Okay.  Both of you do not have lawyers,

24   correct?

25        MS. RICIA DANIELS:  No, ma'am.

*Status Conference*                                                                                      5

1          THE COURT:  All right.  Do you know where Olajuwon

2     Akinola is?

3          MS. RICIA DANIELS:  He is actually — I didn't know he

4     was part of this order for today.  This is —

5          THE COURT:  Well, okay, —

6          MS. RICIA DANIELS:  Um-hum.

7          THE COURT:  — so he's not here.

8          MS. RICIA DANIELS:  No, ma'am.

9          THE COURT:  All right.  Let me get other appearances

10    first —

11         MS. RICIA DANIELS:  Okay.

12         THE COURT:  — and then we'll talk about how we're

13    going to proceed.

14         Other appearances?  Mr. Seidel, I think you chimed in

15    on the phone.

16         MR. SEIDEL:  Yes.  I apologize and thank you for

17    allowing me to appear by phone.  Scott Seidel, trustee appointed

18    in the Akinola —

19         THE COURT:  Okay.  Thank you.

20         MR. PAZ:  Daniel Paz for Icon Tower, LP, the Cirque

21    Apartments, in Ms. Ricia Daniels case and Mr. Olajuwon Akinola's

22    case.

23         THE COURT:  Okay.  Thank you.

24         MS. DURHAM:  Mary Fran Durham for the United States

25    Trustee.  I have with me Brad Perdue from our office.

*Status Conference*                                                                6

1          THE COURT:  Okay.  Thank you.

2          MR. BONE:  Your Honor, Robert Bone appearing on behalf

3   of DeLayne Apartments, LLC, in the Ricia Daniels matter.

4          THE COURT:  Okay.  Your last name is spelled how?

5          MR. BONE:  I'm sorry, Your Honor.  B-o-n-e, Bone.

6          THE COURT:  Okay.  Thank you.

7          MR. CUNNINGHAM:  Good afternoon, Judge.  Jim

8   Cunningham, the trustee in the third case, the Jaricia Gwendolyn

9   Daniels case.

10         THE COURT:  Okay.  Thank you.

11         Any other appearances?  Sir, were you here to appear?

12         MR. PITZINGER:  Your Honor, this is Joe Pitzinger with

13  the United States Department of Justice Tax Division.  I just

14  had a lawsuit with one of the debtors and I'm just here to

15  observe.

16         THE COURT:  Okay.  Thank you.

17         MR. PITZINGER:  Thank you.

18         THE COURT:  All right.  I need to swear both Ms.

19  Daniels in right now, since you are not represented by lawyers.

20  Statements by you may be partly testimony, so I need to swear

21  you in.  Please both raise your right hand.

22         JARICIA GWENDOLYN DANIELS, DEBTOR, SWORN

23             RICIA ANN DANIELS, DEBTOR, SWORN

24         MS. RICIA DANIELS:  I do.

25         MS. JARICIA DANIELS:  Yeah, I do.

*Status Conference*                                                                 7

1          THE COURT:  Okay.  We — the Court issued orders

2   setting status conference, again in both of your cases, as well

3   as Olajuwon Akinola's case on August 14th because of

4   irregularities in the bankruptcy paperwork, which we'll talk

5   about in a moment.

6          I also had an application to go forward without paying

7   a filing fee in the younger Ms. Daniels case that I had

8   questions about and I also had one of those in Mr. Akinola's

9   case, so that was a second reason for having a status

10  conference.

11         And then, third, in Mr. Akinola's case, it appeared he

12  was in some sort of healthcare business, —

13         MS. RICIA DANIELS:  Yes.

14         THE COURT:  — and the Bankruptcy Code requires me, in

15  Section 333, to conduct a hearing to determine whether a patient

16  care ombudsman is necessary any time you have a bankruptcy case

17  involving a healthcare business.

18         So those are the three reasons that we are here today.

19         Let me clarify, first, the relationship among the

20  three of you.  Are you mother and daughter?

21         MS. RICIA DANIELS:  Yes.

22         MS. JARICIA DANIELS:  Yes.

23         MS. RICIA DANIELS:  This is my daughter.

24         THE COURT:  Okay.

25         MS. RICIA DANIELS:  And Akinola is my boyfriend.

*Status Conference*                                                              8

1              THE COURT:  Okay.

2              MS. RICIA DANIELS:  But I don't have any ownership or

3    partnership in his business.

4              THE COURT:  All right.  Well, you know I ordered him

5    to appear, so I don't know if you have any way of getting in

6    touch with him, —

7              MS. RICIA DANIELS:  Yes, I do.  I can —

8              THE COURT:  — but when a federal court orders you to

9    appear, you appear or you're in contempt of court.  And I can —

10             MS. RICIA DANIELS:  What —

11             THE COURT:  — give him another chance to show up or

12   send the Marshals after him or do whatever I need to do.

13             MS. RICIA DANIELS:  I can call him, because he

14   actually lives up the street.  But what address was his sent to,

15   now the reason why I found out about me being here, my mail went

16   to 9201, it didn't go to 9210.  But Mr. Bone, for DeLayne,

17   called me last week to let me know about the case.

18             THE COURT:  Okay.

19             MS. RICIA DANIELS:  And I talked to the —

20             THE COURT:  Well, let —

21             MS. RICIA DANIELS:  — Bankruptcy Court yesterday and

22   they told me they make a mistake on the mail-out.

23             THE COURT:  Okay.

24             MS. RICIA DANIELS:  Um-hum.

25             THE COURT:  Well, there may have been some confusion

*Status Conference*                                                                 9

1   because there were a lot of different addresses used by each of

2   you.  First let me ask:  Which is the correct address for you —

3         MS. RICIA DANIELS:  10- — 1089 West Exchange,

4   Apartment 9210, Allen, Texas 75013.

5         THE COURT:  Well, that is an address we had for both

6   you and your daughter; is that correct?

7         MS. JARICIA DANIELS:  Yeah.

8         MS. RICIA DANIELS:  They said that they mailed it out

9   to 9101, 9201, because I actually — when Mr. Bone called me,

10  that's how I found out.  And I came up here to the Bankruptcy

11  Court.

12        THE COURT:  Okay.  The order was served by the Clerk's

13  Office on you at 1089 West Exchange, —

14        MS. RICIA DANIELS:  Uh-huh.

15        THE COURT:  — Apartment 9210, Allen, Texas 75013.

16        MS. RICIA DANIELS:  That's correct.

17        THE COURT:  Okay.  That's where the Clerk served it

18  and no return mail was received —

19        MS. RICIA DANIELS:  Well, they put it in my door in an

20  apartment, so I didn't sign for it.  She came home and seen it,

21  so it didn't actually — you know, but she let me know that I got

22  a letter.

23        THE COURT:  That is the correct address.  We also sent

24  it to 2500 North Houston Street, Apartment 1412, Dallas, Texas

25  75219.  What's that?

*Status Conference*                                    10

1          MS. RICIA DANIELS:  That's Mr. Akinola's address.

2          THE COURT:  Okay.  Is that —

3          MS. RICIA DANIELS:  It's 2500 —

4          THE COURT:  Is that a Cirque apartment or not?

5          MS. RICIA DANIELS:  Uh-huh, that's Cirque.  Yes,

6   ma'am.

7          THE COURT:  Okay, and you had also used that address —

8          MS. RICIA DANIELS:  Yes.  I co-signed on him an

9   apartment back a few months ago, and that's why they probably

10  used that address.

11         THE COURT:  And I think I lifted the automatic stay

12  for your client, Mr. Paz, in Ricia's case, right?

13         MR. PAZ:  That's correct, Your Honor.

14         THE COURT:  And then Mr. Akinola filed bankruptcy

15  shortly thereafter, correct?

16         MR. PAZ:  Correct.

17         THE COURT:  Okay.  All right.  So let me — let me

18  start out by understanding this, because if we're — if there's

19  any confusion on addresses, that's not good for anyone

20  concerned.

21         I guess you two are both residing at the Allen address

22  that —

23         MS. RICIA DANIELS:  Yes, ma'am.

24         THE COURT:  — that we described.  But we had different

25  other leases shown on Ricia Daniels' voluntary petition.  We had

*Status Conference*                                                    11

1  — well, this showed up at someplace:  Christon Company, Parkside

2  Center, ALLC, 4300 Alpha Road, Suite 100, Dallas, Texas.  I

3  think that was on of the back pages of your voluntary petition.

4  What's that?

5          MS. RICIA DANIELS:  That used to be my storefront

6  property that I had that I leased.

7          THE COURT:  Storefront for what?

8          MS. RICIA DANIELS:  For a business that I had, Ricia's

9  Convenience Tax Service.  It was actually called Elite Service

10 Center, but I moved out of that space in August of 2014.

11         THE COURT:  Okay.  So you moved out.  It was a

12 storefront for Ricia's...

13         MS. RICIA DANIELS:  Convenience Tax Service.

14         THE COURT:  ...Convenience...

15         MS. RICIA DANIELS:  Tax Service.

16         THE COURT:  ...Tax Service.

17         MS. RICIA DANIELS:  Uh-huh.

18         THE COURT:  And then you said also "Elite"?

19         MS. RICIA DANIELS:  Well, it was called Elite Service

20 Center because it did more than just taxes.

21         THE COURT:  What else did it do?

22         MS. RICIA DANIELS:  We did MoneyGram.  It also did

23 automobile insurance and, let's see, well, PayDay Loans.

24         THE COURT:  Okay.  Were you the president and owner of

25 that?

1        MS. RICIA DANIELS:  Yes, I was.  But actually PayDay

2   Loans collided in '12.  I actually closed the tax part of my

3   business.  Mr. Joe Pitzinger — that was in 2014.

4        THE COURT:  Okay, let me back up.  I'm trying to get

5   preliminary matters out of the way, but there may be attorneys

6   here who actually want to examine you on the witness stand.

7        Let me ask:  Are there attorneys here today who — I

8   don't want to usurp your role here — are there attorneys here

9   who want to question this witness, by chance?

10        MR. PAZ:  No, Your Honor.

11        THE COURT:  Okay.

12        MR. BONE:  Your Honor, I was content to rely on your

13   questioning.  I'm sure we have the same questions.

14        THE COURT:  Okay, all right.  Ms. Durham, did you have

15   a line of questioning today?

16        MS. DURHAM:  I had a line of questioning, but I'm not

17   sure if the Court's going to cover that, so.

18        THE COURT:  Okay, all right.  We'll get through this

19   preliminary stuff and then — and we'll certainly give you your

20   chance.

21        All right.  Well, let me — okay.  So you were a tax

22   preparer.

23        MS. RICIA DANIELS:  Yes, ma'am.

24        THE COURT:  You also were in the business of

25   MoneyGrams, —

*Status Conference*                                                13

1        MS. RICIA DANIELS:  Um-hum.

2        THE COURT:  — automobile insurance, and PayDay Loans.

3        MS. RICIA DANIELS:  PayDay Loans, yes, ma'am.

4        THE COURT:  You vacated that business in August 2014?

5        MS. RICIA DANIELS:  Well, no, I left the location, the

6    storefront property in '14 due to a pet store moved nextdoor and

7    the smell of the animals, the sh- —

8        THE COURT:  Okay.

9        MS. RICIA DANIELS:  It was basically a leasing issue,

10   so it didn't —

11       THE COURT:  You said something like the PayDay Loans

12   collided in 2012.  I wasn't sure —

13       MS. RICIA DANIELS:  Well, meaning 2012, meaning upside

14   down in the business.  The money from '09 to '12 was pretty

15   good, so.  But by that third quarter of '12 was really bad.

16       THE COURT:  Okay.  Well, let's continue going through

17   the addresses.

18       MS. RICIA DANIELS:  Uh-huh.

19       THE COURT:  So that was — that was the Alpha Road

20   address?

21       MS. RICIA DANIELS:  Yes, ma'am.

22       THE COURT:  All right.

23       MS. RICIA DANIELS:  And also when I had the meeting,

24   the first meeting I had with you, the Elite Service Home Health

25   Agency is where — we talked about when I had the meeting with

*Status Conference*                                                    14

1   you about six weeks ago.

2            THE COURT:  With me or with the trustee?

3            MS. RICIA DANIELS:  No, with you.

4            THE COURT:  Okay.

5            MS. RICIA DANIELS:  Um-hum.

6            THE COURT:  All right.  That may have been a —

7            MS. RICIA DANIELS:  That was the Home Health where I

8   told you I was under moratorium hold —

9            THE COURT:  Okay.  That may have been — I set your

10  motion to waive your filing fee for a hearing.

11           MS. RICIA DANIELS:  Yes, yes.

12           THE COURT:  So it must have been there when we were

13  inquiring about your income.  All right.  Well, I think I may

14  have missed the boat then on whether you needed a patient care

15  ombudsman, having a hearing on that.  Are you in a healthcare

16  business?

17           MS. RICIA DANIELS:  Yes, ma'am.

18           THE COURT:  Okay.  We're going to come back to that.

19           Let's get through the addresses first.  DeLayne

20  Apartments, V. The Group, 11766 Wilshire Boulevard, Los Angeles,

21  California.  That's Mr. Bone's client.

22           I'm picking this address up off her schedules.

23           MR. BONE:  Your Honor, while initially — I mean we are

24  DeLayne, but that's not our address.  Our address is the same

25  address that she said is her mailing address.

1          THE COURT:  1089 West Exchange?

2          MR. BONE:  Yes, Your Honor.

3          Okay.  All right.  So where did that address come

4   from?

5          MS. RICIA DANIELS:  When I Google DeLayne Apartments,

6   that's what I got for their corporate number —

7          THE COURT:  Okay.  So it's intended to give notice to

8   Mr. Bone's client?

9          MS. RICIA DANIELS:  Um-hum.  Um-hum.

10         THE COURT:  Okay.  Cirque Apartments UDR, 3875 Ponte

11  Avenue, Number 400, Addison, Texas, is that a different Cirque

12  apartment besides the one on Houston Street in Dallas?

13         MS. RICIA DANIELS:  No.  That's the actual one that

14  shows up online for their —

15         THE COURT:  Okay.  Google, trying to give notice

16  again?

17         MS. RICIA DANIELS:  Yes.

18         THE COURT:  Okay.  Mr. Paz is shaking his head yes.

19         MR. PAZ:  Yes.

20         THE COURT:  Okay.  Then, last but not least,

21  Skillman/Audelia Partners, LP, Teel Enterprise, Inc., 9205

22  Skillman Street, Suite 112, Dallas, Texas 75243.  What's that?

23         MS. RICIA DANIELS:  I have no idea what's on Skillman

24  for Dallas.

25         THE COURT:  Okay.  Well, I took it off your —

*Status Conference*                                              16

1      MS. RICIA DANIELS:  Unless it's a credit card?  Is it

2 on my matrix?

3      THE COURT:  It's on your Schedule G —

4      MS. RICIA DANIELS:  It's on my Schedule D —

5      THE COURT:  — as a nonresidential property lease.

6      MS. RICIA DANIELS:  Skillman — oh, I was going to do a

7 contract with a client at the time of my bankruptcy and I

8 decided not to because I knew my funds wasn't — I wasn't going

9 to have any money at that time.  So I actually should have taken

10 that one off before I turned it in.  There should be another

11 update version where I took that off, and I contacted Mr.

12 Akinola and told him I couldn't afford to do it.

13      THE COURT:  All right.  So where are you doing

14 business now?

15      MS. RICIA DANIELS:  I am doing business at 13612

16 Midway Road, Suite 355, Dallas, Texas 75244.  That's actually my

17 daughter's location.  That's where I'm doing business at.  So

18 it's not on my bankruptcy paperwork.

19      THE COURT:  Okay.  So there are, I guess, three leases

20 that are —

21      MS. RICIA DANIELS:  With my —

22      THE COURT:  — affected with you that —

23      MS. RICIA DANIELS:  Yes, ma'am.

24      THE COURT:  — are affected by your bankruptcy where

25 you're residing in Allen, Texas; —

*Status Conference*                                          17

1          MS. RICIA DANIELS:  Yes, ma'am.

2          THE COURT:  — the Cirque apartment at 2500 North

3   Houston Street, which you leased with —

4          MS. RICIA DANIELS:  Co-signed with Al- —

5          THE COURT:  — co-signed with your boyfriend; —

6          MS. RICIA DANIELS:  Um-hum.

7          THE COURT:  — and then there's the property you moved

8   out of in August 2014 on Alpha Road, —

9          MS. RICIA DANIELS:  Yes, ma'am.

10         THE COURT:  — 4300 Alpha Road.  And then now the

11  property that you're doing business with your daughter at 13612

12  Midway Road?

13         MS. RICIA DANIELS:  Yes, ma'am.

14         THE COURT:  But that's not on your —

15         MS. RICIA DANIELS:  Oh, my — it's not on my

16  bankruptcy, her office.

17         THE COURT:  And why, again, is it not on your

18  bankruptcy paperwork?

19         MS. RICIA DANIELS:  Because the lease is not in my

20  name.

21         THE COURT:  Whose name is it in?

22         MS. JARICIA DANIELS:  My name.

23         THE COURT:  Okay.  Well, let's go through your

24  properties, Jaricia.  I only had on your bankruptcy paperwork

25  1089 West Exchange, Allen, Texas.  But you're saying there's

*Status Conference*                                                      18

1   this other lease at 13612 Midway Road?

2            MS. JARICIA DANIELS:  Yes.

3            THE COURT:  Okay.  Tell me how old you are.

4            MS. JARICIA DANIELS:  Nineteen.

5            THE COURT:  You're 19 years old —

6            MS. JARICIA DANIELS:  Yes.

7            THE COURT:  — and you're filing a bankruptcy?

8            MS. JARICIA DANIELS:  Yes.

9            THE COURT:  Why are you filing bankruptcy?

10           MS. JARICIA DANIELS:  I work for her healthcare

11  company and I'm a caregiver and we're not making money right now

12  — right now because of billing.

13           THE COURT:  You're 19 years old.

14           MS. JARICIA DANIELS:  Yes.

15           THE COURT:  Did someone advise you to file bankruptcy?

16           MS. JARICIA DANIELS:  No.

17           THE COURT:  Well, what sorts of debts are a problem in

18  your life?

19           MS. JARICIA DANIELS:  My car payments, phone bills.

20  Let me see, those two and —

21           THE COURT:  What is your car payment?

22           MS. JARICIA DANIELS:  How much or what —

23           THE COURT:  How much and for what car?

24           MS. JARICIA DANIELS:  It's an Audi 2013 and it's, I

25  don't know, probably around $2,000.  It's 890 a month, around

*Status Conference*                                                19

1    that.

2            THE COURT:  How does a 19-year-old go out and get a

3    car like that?

4            MS. JARICIA DANIELS:  My mom, she bought it for me

5    when I was 18.

6            MS. RICIA DANIELS:  And tell her for what reason.

7    Your business.

8            MS. JARICIA DANIELS:  My business, yeah.

9            THE COURT:  What is your training as far as your

10   healthcare training?

11           MS. JARICIA DANIELS:  I'm a caregiver.  Like I go out

12   and help patients and take care of them.

13           THE COURT:  What is your medical training?

14           MS. JARICIA DANIELS:  I don't have it.

15           THE COURT:  You don't have any?

16           MS. JARICIA DANIELS:  No.  I started training in the

17   beginning when I was — because I helped this little girl, and I

18   trained for about probably two weeks at her house.

19           THE COURT:  When was this vehicle purchased, by the

20   way?

21           MS. JARICIA DANIELS:  2014.  I think it was June.

22           THE COURT:  Mom, maybe you can help out.

23           MS. RICIA DANIELS:  It was.  It was graduation 2014.

24   What happened, and at 18 she wanted a flower shop.  So I started

25   her a flower shop with FTD and Teleflora.  And so she was

1   telling me a year before she wanted a flower shop.  So she did

2   two years for the summer with an entrepreneur program at

3   Stanford University.  So she told me that when she graduated she

4   wanted a flower shop.  So what I done, I took $30,000 and

5   started her — go ahead, and you can — so I don't want anyone to

6   think that I'm imposing what she wanted.

7          But you go ahead and tell them about your flower shop

8   and my mother.

9          MS. JARICIA DANIELS:  We started the flower shop in

10  2000- — the summer of 2014, the name was Pretty Petal Florist.

11         MS. RICIA DANIELS:  And that's where the purchase of

12  the vehicle came, because the silk outlining was the name of the

13  flower shop.  The flowers ordered, the refrigerators,

14  everything, we started in her location, so she was doing flowers

15  and taxes out of the location.

16         THE COURT:  She was doing taxes?

17         MS. RICIA DANIELS:  Owning the office.

18         MS. JARICIA DANIELS:  Yes.

19         THE COURT:  Where was this office —

20         MS. RICIA DANIELS:  The same —

21         THE COURT:  — and where was this flower business?

22         MS. RICIA DANIELS:  13612 Midway Road, Suite 355.

23         THE COURT:  Okay.  What is going on — what is the

24  Boxer property, 2727 LBJ Freeway, 6 Gen (phonetic)?

25         MS. RICIA DANIELS:  Boxer property?

*Status Conference*                                                    21

1           THE COURT:  Um-hum.

2           MS. RICIA DANIELS:  I don't have anything Boxer.

3           THE COURT:  Okay.  That —

4           MS. RICIA DANIELS:  Is that on my —

5           THE COURT:  — shows up on your boyfriend's Schedule G.

6           MS. RICIA DANIELS:  Oh, that's his property for his

7  business.

8           THE COURT:  And what is his —

9           MS. RICIA DANIELS:  That's where his location —

10          THE COURT:  And what is his business?

11          MS. RICIA DANIELS:  Hebrews Healthcare Services.  I

12  actually can call him.  They took my phone.

13          THE COURT:  Okay, let me back up.

14          MS. RICIA DANIELS:  Um-hum.

15          THE COURT:  Tell me what all businesses you have,

16  Ricia.

17          MS. RICIA DANIELS:  All the ones that I mentioned.

18  The Pretty Petals is her...

19          MS. JARICIA DANIELS:  Then pet...

20          MS. RICIA DANIELS:  And —

21          THE COURT:  Okay.  What businesses do you currently

22  have?

23          MS. RICIA DANIELS:  Right now?

24          THE COURT:  Yes.

25          MS. RICIA DANIELS:  I have Elite Service Center.

*Status Conference*                                                                 22

1          THE COURT:  Which is doing what?

2          MS. RICIA DANIELS:  That's doing — we're doing like

3    preview services of screening people for — when they come in for

4    jobs for the Home Health Agency.  So it's, I would say like,

5    pretemporary services for attendance, and the Elite Service Home

6    Health Agency.

7          THE COURT:  And what does that separate agency do?

8          MS. RICIA DANIELS:  That's the Home Health Agency

9    where my daughter works as an attendant.

10         THE COURT:  So tell me about this business.

11         MS. RICIA DANIELS:  The Elite Service Home Health

12   Agency?  We have right now, when I met with you the first time I

13   had one patient, and now we have a total of four patients.  I

14   have two contracts, MDCP, Medically Dependent Children Program,

15   is through the State of Texas; and I have DBMD, Deaf Blind with

16   Mental Disabilities.  Both of those programs are pediatric

17   healthcare businesses — healthcare contracts.  I receive those

18   contracts December 1 of 2014.  I could not service any kids

19   until I went to training, which training started in January.  So

20   I had to go through the State and do a training before I could

21   actually use the contracts.

22         I received my first patient in February.  By the time

23   the paperwork and approval was done, my paperwork right now sat

24   in Austin for like maybe until June the 8th.  And as of this

25   morning, I called the State and they told me that they should

*Status Conference* 23

1   have it processed by tomorrow.  So I have been kind of like at a

2   standstill.

3          My daughter has seen that patient.  She's been seeing

4   that patient since we got the approval to see the patient the

5   weekend before Easter.  She's been seeing that patient from now

6   until almost September without us being able to bill.  So since

7   they told me that I should have an email confirmation with an

8   approval code, that we should be able to bill.

9          THE COURT:  You said you started out with one patient

10  and now you have four patients?

11         MS. RICIA DANIELS:  Yes, I have four patients.  The

12  actual State for the DBMD program received funds about three

13  weeks ago and they sent the release over for three new patients,

14  so their information is actually in Austin waiting on a release.

15  The first patient was kind of like —

16         THE COURT:  Are you providing services to four people?

17         MS. RICIA DANIELS:  No.  We provide services to one.

18  I can't —

19         THE COURT:  You have only seen one person?

20         MS. RICIA DANIELS:  Yes.  I can't provide services

21  until I get the approval.

22         THE COURT:  What is the State of Texas agency you're

23  dealing with?

24         MS. RICIA DANIELS:  DBMD and MDCP, but my patients are

25  all DBMD.

*Status Conference*                                            24

1            THE COURT:  DVM— —

2            MS. RICIA DANIELS:  DB, B as in "boy," Deaf Blind

3     Mental with Disabilities.

4            THE COURT:  DBMD?

5            MS. RICIA DANIELS:  Yes, ma'am.

6            THE COURT:  And MDCP?

7            MS. RICIA DANIELS:  MD— — Medically Dependent Children

8     Program.

9            THE COURT:  What is the State of Texas — I mean is

10    there an agency with those initials —

11           MS. RICIA DANIELS:  Yes — oh, I'm sorry, DADS,

12    Department of Aging Disability Services.  I'm sorry.

13           THE COURT:  Do you have a license?

14           MS. RICIA DANIELS:  Yes, I do.

15           THE COURT:  What is the license called?

16           MS. RICIA DANIELS:  It's a Community Service license.

17    Community service through DADS.  It's a Home Healthcare

18    License —

19           THE COURT:  Community —

20           MS. RICIA DANIELS:  I'm sorry.  Let me — let me go

21    back, because —

22           THE COURT:  You're licensed from the State of Texas.

23    I assume you have a license from the State of Texas?

24           MS. RICIA DANIELS:  Yes.  And —

25           THE COURT:  And what is it called?

*Status Conference*                                              25

1        MS. RICIA DANIELS:  The license from the State of —

2   excuse me — is Licensed Home Health Agency, which is LHHS.  And

3   I do have my license number.  I —

4        THE COURT:  None of this was disclosed in your

5   bankruptcy and it needed to be disclosed in your bankruptcy.

6        MS. RICIA DANIELS:  Home Health — Elite Service Home

7   Health Agency wasn't in my bankruptcy?

8        THE COURT:  I didn't see it anywhere.

9        Laura, did you see it anywhere?

10        Okay.  Does your daughter — do you have a license?

11        MS. JARICIA DANIELS:  No, I don't.

12        THE COURT:  Is it Mr. Olajuwon or is it Mr. —

13        MS. RICIA DANIELS:  Akinola.

14        THE COURT:  Akinola.

15        MS. RICIA DANIELS:  Um-hum.  That's his last name,

16   Akinola.

17        THE COURT:  Are you sure that's right?

18        MS. RICIA DANIELS:  Yes, Akinola.

19        THE COURT:  Because that was another irregularity we

20   picked up.  We weren't sure which was his first name and which

21   was his last name.

22        MS. RICIA DANIELS:  The Akinola is the last name, the

23   O- — yeah.

24        THE COURT:  Because it was different different places.

25   Okay, does his business have anything to do with your business?

*Status Conference*                                                  26

1          MS. RICIA DANIELS:  No.

2          THE COURT:  What does Little Dove Pediatric Home

3   Health do?

4          MS. RICIA DANIELS:  That's the DBA of Hebrews

5   Healthcare Services.  It's considered Hebrews Healthcare

6   Services, DBA Little Dove Pediatric.

7          THE COURT:  And what do they do?

8          MS. RICIA DANIELS:  They do — he doesn't have the same

9   programs I have.  I know he has pediatrics and I think he might

10  have geriatrics, but he don't have MDCP because, believe me,

11  I've called him about things and he's not familiar with my

12  program, and talked to him about it.

13         THE COURT:  Okay.  Again, you don't know why he's not

14  here?

15         MS. RICIA DANIELS:  He didn't even — I talked to him

16  earlier and he didn't say anything about he had to be in court

17  today.  That's what I couldn't understand.  And he would be here

18  if he knew.

19         THE COURT:  He's your boyfriend; you didn't say, 'Hey,

20  we need to go to court today'?

21         MS. RICIA DANIELS:  I told him I had to go to court.

22         THE COURT:  You didn't tell him he needed to go —

23         MS. RICIA DANIELS:  He told me that he went to court —

24  I guess he went to court Thursday or Friday last week over off

25  of — because he said he had to go off of Polk Street.

*Status Conference*                                                                27

1          THE COURT:  I don't know what that was about.  His

2     address is 2500 North Houston Street, Apartment 1412, Dallas,

3     Texas —

4          MS. RICIA DANIELS:  Yes.

5          THE COURT:  — 75219?  Yes?

6          MS. RICIA DANIELS:  Yes.

7          THE COURT:  And then his business address is 10925

8     Estate Lane, Suite 214, Dallas, Texas?

9          MS. RICIA DANIELS:  W214, because there's two sides

10    for this —

11         THE COURT:  Okay.

12         MS. RICIA DANIELS:  Yeah, the west side.

13         THE COURT:  Okay.  So we sent the order to the correct

14    addresses for him.

15         MS. RICIA DANIELS:  Um-hum.

16         THE COURT:  Okay.  Tell me what sort of tax services

17    the three of you are engaged in?

18         MS. RICIA DANIELS:  I am actually not in tax services

19    anymore.  I signed a waiver in December — well, January of this

20    year to not be able to do taxes.

21         THE COURT:  All right.  So you were doing tax —

22         MS. RICIA DANIELS:  Yes.

23         THE COURT:  What, preparing tax returns for people?

24         MS. RICIA DANIELS:  Yes, I was.

25         THE COURT:  And then you stopped in January or

*Status Conference*                                                    28

1   February of this year?

2            MS. RICIA DANIELS:  Oh, yes, ma'am.

3            THE COURT:  All right.  And so what have you been

4   doing since?

5            MS. RICIA DANIELS:  I have been — actually when her

6   flower business, she stopped that, I've been doing the medical.

7            THE COURT:  But you haven't had any patients?

8            MS. RICIA DANIELS:  The one patient.  It's a lot of

9   paperwork and training, so even though I haven't had but one

10  patient, I've been doing a lot of training and learning the

11  process, because this is something I'm not — I'm not from

12  medical and I had to learn a lot from the medical.

13           THE COURT:  Okay.  Let me ask you, Jaricia, are you in

14  the tax preparation business?

15           MS. JARICIA DANIELS:  Yes.  My business is Xattax,

16  X-a-t-t-a-x.

17           THE COURT:  So tell me what you do.

18           MS. JARICIA DANIELS:  I own it and I have people who

19  work for me.

20           THE COURT:  How at 19 years old do you know how to do

21  this?

22           MS. JARICIA DANIELS:  I actually — I've been watching

23  my mom because she's been in business over — for probably over

24  ten years, probably over ten years, and I've learned from an

25  early age.

*Status Conference*                                                        29

1          THE COURT:  So at nine years old you started watching

2    your mom prepare tax returns for people?

3          MS. JARICIA DANIELS:  Yes.  I used to go to her office

4    and watch her do taxes and copy paperwork, yeah, um-hum.

5          THE COURT:  So who else is doing this besides you?

6          MS. JARICIA DANIELS:  I probably have at least ten

7    other employees during tax time, um-hum.

8          THE COURT:  Anything else you're in business doing?

9          MS. JARICIA DANIELS:  Not right now, no.

10          THE COURT:  Okay.  Guru Tax Services, LLC, what — can

11    you either one of you tell me about that?

12          MS. RICIA DANIELS:  That's Mr. Akinola's business.  I

13    don't know anything about his tax services.  When I met him, he

14    told me that he had a tax office and he — this year I will say

15    how was your tax season.  And he said that he wasn't — didn't

16    have any employees active this year.  So we had been talking for

17    a year and I know he didn't have a tax season for this year.

18          THE COURT:  All right.  I do have some questions about

19    the credit counseling certificate that you each filed in your

20    case.

21          But I'm going to ask Ms. Durham:  At this time do you

22    have questions about that or other things?

23          MS. DURHAM:  We have questions about the credit

24    counseling certificate.

25          THE COURT:  All right.  Well, I'm going to ask Ricia

*Ricia Daniels - Examination by Ms. Durham*                               30

1    Daniels —

2              MS. RICIA DANIELS:  Yes, ma'am.

3              THE COURT:  — if you would go ahead and take a seat on

4    the witness stand and you can have a seat there.

5              MS. RICIA DANIELS:  Okay.

6              THE COURT:  And I've sworn you in and we're going to

7    let Ms. Durham, the U.S. Trustee's attorney, —

8              MS. RICIA DANIELS:  Where do you want her?

9              THE COURT:  You can just sit anywhere back there in

10   one of those free chairs.

11             And I'll remind you you are under oath still.

12             MS. RICIA DANIELS:  Yes, ma'am.

13             THE COURT:  And, Ms. Durham, who is the U.S. Trustee's

14   attorney, can ask questions now.

15             <u>EXAMINATION on behalf of the U.S. TRUSTEE</u>

16   BY MS. DURHAM:

17   Q.  Good afternoon, Ms. Daniels.

18   A.  Good afternoon.

19   Q.  Tell me how you went about obtaining credit counseling?

20   A.  I had called in to the service and did it over the phone.

21   Q.  What service did you call?

22   A.  Wow, Alan something.  I can't remember the name, but it was

23   a while ago.

24   Q.  And are you related to Darnell Keith Dodd or his wife?

25   A.  No.

*Ricia Daniels - Examination by Ms. Durham*                    31

1    Q.   Irene — Iris Rene Dodd?

2    A.   No.

3    Q.   Do you know how you got a copy of their credit counseling

4    certificate?

5    A.   No, I don't.

6    Q.   I'm going to show you what is Docket Number 17 in Ms.

7    Daniels' case and I'm going to show you what's Docket Number 4

8    in Case Number 15-30126, the bankruptcy case of Darnell Keith

9    Dodd.

10             MS. DURHAM:   I'm sorry.   I approached the witness in

11   order to make —

12             THE COURT:   Okay, that's fine.

13             MS. DURHAM:   But I did want to just point something

14   out with my fingers on this.

15             THE COURT:   Okay.   Okay.

16   BY MS. DURHAM:

17   Q.   I'm going to have you look at those numbers there.

18   A.   Um-hum.

19             MS. DURHAM:   I have Brad Perdue here who can discuss

20   with the Court if the Court has not previously heard testimony

21   about how credit counseling certificates are issued, but in the

22   upper left corner there is a bar code with some numbers.   And

23   the introductory numbers are the counseling firm, because the

24   U.S. Trustee supervises all of those credit counseling firms

25   under — it refers to that in Section 109 of the Bankruptcy Code.

*Ricia Daniels - Examination by Ms. Durham*                    32

1       THE COURT:  Okay.

2       MS. DURHAM:  The end part of it is the unique number

3   given to the debtor — or the person —

4       THE COURT:  Okay.

5       MS. DURHAM:  — taking the counseling.

6   BY MS. DURHAM:

7   Q.  So, Ms. Daniels, what are the last six digits of your credit

8   counseling certificate?

9   A.  024088689.

10  Q.  Your — are you looking at the right...

11  A.  024 — right here — 024086819.  I'm sorry.

12  Q.  Okay.  They're kind of blurry.  And then look at Mr.

13  Daniels' certificate and tell me — I mean Mr. Dodd's certificate

14  and tell me what his number is.

15  A.  024086819.

16  Q.  And aren't they identical numbers?

17  A.  Yes, they are.

18  Q.  Can you explain how you and another person have the exact

19  client I.D. from a credit counseling?

20  A.  No, I can't.  I can't explain it —

21  Q.  Did you take Mr. Dodd's certificate and copy it?

22  A.  No, I did not.

23  Q.  Did you take his bar code and copy it?

24  A.  No, I did not.

25  Q.  Do you have a receipt for the payment of your credit

1  counseling?

2  A.  It would be in my email where I paid it, because I did pay

3  it online with a credit card.

4  Q.  And did you take it with Cricket Debt Counseling, as it says

5  on this document —

6  A.  Yes, ma'am, I did.

7  Q.  Now I'm going to show you — this is going to be Docket

8  Number 3 in your daughter's case, 15-33340.  And, again, if

9  you'll look at the bar code, would you agree that the last

10  numbers are exactly the same?

11  A.  Yes, they are the same.

12  Q.  And then I find I have your friend Mr. Akinola's, in his

13  case, Number 15-33290, that would be document Number 4 that he

14  filed.

15          MS. DURHAM:  I'm going to approach the witness.

16          THE COURT:  You may.

17          MS. RICIA DANIELS:  Yes.  His number is actually the

18  same number, a different — but the same.

19  BY MS. DURHAM:

20  Q.  And you're saying — did the three of you take the class at

21  the same time?

22  A.  No, we did not.

23          MS. DURHAM:  Those are the questions I had about the

24  credit counseling certificate, Your Honor.  And I do have my

25  witness here, if the Court wanted to hear more about the

*Status Conference*                                                    34

1   logistics of how the credit counseling certificates are issued.

2              THE COURT:  Okay.  I think I will.

3              Does anyone else have questions at all of this

4   witness?

5              MR. PAZ:  No, Your Honor.

6              THE COURT:  Okay.

7              MS. RICIA DANIELS:  But can I state something?

8              THE COURT:  Just a moment.

9              MS. RICIA DANIELS:  Okay.

10             THE COURT:  Do you have questions?

11             MR. BONE:  Your Honor, not at this time.  I'm content

12  to listen.  I have questions, but I'm not sure that right now is

13  the appropriate time.

14             THE COURT:  All right.  Well, let me be clear.  Do you

15  have any explanation to offer for these same numbers, these same

16  bar codes being on all three?

17             MS. RICIA DANIELS:  No, I don't.  I can actually tell

18  you I checked both, my daughter and Mr. Akinola, the actual

19  number to take this course, but there was no — if you're trying

20  to say plagiarism — there was no plagiarism up on my part, no,

21  ma'am.

22             THE COURT:  No cutting and pasting?

23             MS. RICIA DANIELS:  No, ma'am.

24             THE COURT:  Did you help or assist in any way your

25  daughter or Mr. Akinola with their bankruptcy paperwork?

*Ricia Daniels - Further by Ms. Durham*                          35

1        MS. RICIA DANIELS:  I helped my daughter and I helped

2   Mr. Akinola and told him what forms, A through J.  But other

3   than me doing it actual, no.  I helped my daughter more with

4   like the forms.  As a matter of fact, she hasn't — she has 14

5   days and she hasn't done her schedules duing to — since the

6   school.

7        THE COURT:  All right.  Anything else of this witness?

8        MS. DURHAM:  I will just have the witness say:

9        <u>FURTHER EXAMINATION on behalf of the U.S. TRUSTEE</u>

10  BY MS. DURHAM:

11  Q.  Do you see who signed the three certificates?  Would you

12  state the name of the person who gave the credit counseling?

13  A.  Yes.  Andrea Chrest.

14  Q.  And did you speak with Andrea Chrest?

15  A.  I sure did, yes, ma'am.

16  Q.  And on what date?

17  A.  For mine, it was like I said.  You gave me Mr. Akinola's —

18  Q.  Yours was the first one I gave you, I believe.  Your name —

19  A.  This one.

20  Q.  — will be on the top right-ish.

21  A.  April the 15th, 2015.

22  Q.  Okay.  And would it surprise you that Andrea Chrest has not

23  worked at Cricket Counseling since before April of 2015?

24  A.  I would not know why I would have her name, I mean because

25  she's the one that approved me over the phone.

1  Q.  Well, her —

2  A.  I was on the phone for like maybe 90 minutes.

3  Q.  Her name is also on Mr. Dodd's, the earlier-filed credit

4  counseling certificate; is it not?

5  A.  Yes, it is.

6  Q.  Okay.

7  A.  And that's 2014 for Mr. Dodd.

8  Q.  When Ms. Chrest worked for Cricket Counseling.

9         I did have one area of inquiry just about the tax

10  services.  Didn't the — the Department of Justice is here today

11  and, I believe, didn't they file a complaint for a permanent

12  injunction against you —

13  A.  Yes, they did.

14  Q.  — and your tax business —

15  A.  A civil action.

16  Q.  So you have ceased, but your — Mr. Akinola and your daughter

17  continue with tax services; is that what you've said?

18  A.  I don't have any dealings with — my daughter does, but I

19  don't have any dealings with Mr. Akinola in his tax business.

20  Q.  Okay.

21  A.  That's why I said I know for a fact this year he didn't have

22  a tax office, so —

23  Q.  But you —

24  A.  — from the time I met him, he was not doing taxes.  I do

25  know that.

*Ricia Daniels - Further by Ms. Durham*                    37

1  Q.  But you assist your daughter in her tax business?

2  A.  She actually has someone else to assist her, Aubry Green

3  (phonetic).  I don't have any assistance with the tax office.

4  And mis- — I sign paperwork with Mr. Pitzinger.  He's aware of

5  that.

6  Q.  Okay.

7  A.  Um-hum.  That's why when the Judge asked what do I do now,

8  since taxes, and I told her the healthcare.

9           THE COURT:  All right.  Is there anything else you

10 wish to say?

11          MS. RICIA DANIELS:  I think that's it.  But I did

12 refer him over to the same company for the credit counseling,

13 because I told him that it was a good one to use over the phone.

14 And you actually — they give you different choices to make a

15 payment.  And I have that via email where I paid it on credit

16 card back in April.

17          THE COURT:  All right.  You're excused.  You're

18 excused.

19     (Ricia Daniels excused from the witness stand.)

20          THE COURT:  All right.  Ms. Durham, did you want to

21 call Mr. Perdue?

22          MS. DURHAM:  Yes, Your Honor.  I'd ask that Brad

23 Perdue from my office be sworn in, just to inform the Court and

24 everyone else how these counseling certificates are processed.

25          THE COURT:  All right, please raise your right hand.

*Perdue - Direct/Durham*                                                    38

1          BRAD D. PERDUE, U.S. TRUSTEE'S WITNESS, SWORN

2          THE WITNESS:  I do.

3          THE COURT:  All right, please be seated.

4                    DIRECT EXAMINATION

5  BY MS. DURHAM:

6  Q.  Mr. Perdue, would you state your name slowly and state your

7  position with the U.S. Trustee?

8  A.  My name is Brad D. Perdue, P-e-r-d-u-e.  I'm a senior

9  bankruptcy analyst with the Department of Justice, Office of the

10  United States Trustee, Northern District of Texas.

11  Q.  And how long have you been in that position?

12  A.  Twenty-two years.

13  Q.  And are you in charge of the credit counseling division,

14  let's say, of the U.S. Trustee's program for the Northern

15  District of Texas?

16  A.  By default I probably know more about the credit counseling

17  and the debtor education then anybody else in the office.

18  Q.  Do you also deal with our Executive Office for U.S. Trustees

19  on credit counseling matters?

20  A.  Yes.  There is a division or a department within the

21  Executive Office in D.C. that oversees the agencies and business

22  that are approved for provider — approved providers of credit

23  counseling and debtor education.

24          MS. DURHAM:  And, Your Honor, Section 109 — is it —

25  (h)(2) of the Code, it — and I haven't read that in a long time,

1   but makes reference to the fact that the United States Trustee

2   certifies and approves non- — I should just probably read you

3   the statute, but the nonprofit companies that can give credit

4   counseling.  And, in addition, we can remove people from that

5   list and we can add people on that list.  And it's 109(h)(1).

6           THE COURT:  Refers to an approved nonprofit budget and

7   credit counseling agency described in 111(a).

8           MS. DURHAM:  And then in (2)(A) it says — it talks

9   about how the U.S. Trustee determines the approved nonprofit

10  budget and credit counseling agencies for such district.

11          THE COURT:  All right.

12          MS. DURHAM:  And that's from — and just to familiarize

13  everyone with the role of the United States Trustee and the

14  credit counseling agencies.

15          THE COURT:  Right.  (11)(B) talks in terms of the

16  United States Trustee only approving a nonprofit agency as

17  follows, and then a process where you have a thorough review of

18  their qualifications, et cetera, et cetera.  All right.

19  BY MS. DURHAM:

20  Q.  Okay.  And, Mr. Perdue, when you get a question or an issue

21  about credit counseling, what do you — how do you proceed with

22  an investigation or an inquiry about credit counseling?

23  A.  We are able within our office to look at the basic

24  information on a credit counseling certificate.  We have a

25  program where we can input the provider number, which you've

Perdue - Direct/Durham                                    40

1   explained to the Court is those first five digits.  We also

2   indicate whether — what district it was issued in.  And that

3   "TXN" is the Northern District of Texas, and I'm looking

4   specifically at the credit counseling certificate in front of

5   me.

6        The last — the next to — next item on the list is — it

7   will identify it as a CC, credit counseling, or a DE, debtor

8   education.  And then the last set of numbers is a specific set

9   of numbers issued for each credit counseling certificate that

10  corresponds to the bar code that is individual, is specific to

11  each credit counseling certificate issued.  All of this is kept

12  at the Executive Offices, but we are able to access it through a

13  program and look on there.  It gives the date that the

14  certificate — the specific information that we can get that's

15  downloaded from each provider, it will list the name — no, not

16  the name of the person taking it, but it will list the date that

17  the course was given, the name of the person that worked for the

18  provider and gave the credit counseling.

19       If we need specific information about the name of the

20  person that took the credit counseling certificate, for privacy

21  reasons we have to make direct contact with the provider, like

22  Cricket Debt Counseling, who is an approved — still approved

23  agency, and we have to contact them.  I get the contact

24  information from the Executive Office, and we make contact with

25  them asking them specifics about the certificate number that

*Perdue - Direct/Durham*                                          41

1   they have issued and when they had issued it.

2   Q.  And did you ask for the specifics on the three cases that

3   are the subject of the status conference today?

4   A.  I did.  We provided the PDF copies of each one of the

5   certificates, even though they had the same certificate number

6   on them, and sent that information to Cricket Debt — or the

7   president of Cricket Debt Counseling.

8   Q.  And what was the specific information that was assigned to

9   that particular certificate number?

10  A.  That it had been issued in a bankruptcy case filed for the

11  Dodds, Mr. and Mrs. Dodd.  I don't remember their first name and

12  I don't have that one in front of me.

13  Q.  You may have the — I believe the exhibits are still up there

14  for Mr. and Mrs. Dodd but, —

15  A.  No.  They're not up here.

16  Q.  — in any case, those last nine digits, are they ever issued

17  to two different people?

18  A.  No.  Those are specific numbers to each person.  So if — so

19  there would be a different number for Mr. Dodd as well as a

20  different number for Mrs. Dodd.  We didn't explore what Mrs.

21  Dodd's number was, but we knew.  So usually you'll see a joint

22  petition, the last two digits will be, for example, number 19,

23  and that will be the husband's number and then number 20 will be

24  the wife's number, assuming they took the course jointly, which

25  I believe saves them a few dollars if they do take it jointly.

*Perdue - Direct/Durham*                                    42

1          MS. DURHAM:  If I may approach the witness and look at

2     the exhibits?

3          THE COURT:  You may.

4          THE WITNESS:  Just grab these out of...

5          MS. DURHAM:  Do you have the Dodd...

6          The witness had the Dodd.  If I may approach the

7     witness and give Mr. Perdue — it is docket — document Number 4

8     in the Dodd case numbered 15-30126.  It was a joint filing of

9     Irene — Iris Rene Dodd and Darnell Keith Dodd.  If I may put —

10         THE COURT:  You may.

11    BY MS. DURHAM:

12    Q.  And, Mr. Perdue, is that — those two certificates, do they

13    have different numbers like you've been describing?

14    A.  Yes.  Iris Rene Dodd, and the last two digits is 14, and

15    Darnell Keith Dodd, the last two digits are 19.

16    Q.  Okay.

17    A.  And those were issued on August 29th, 2014.

18         MS. DURHAM:  That is what we wanted to tell the Court

19    about the credit counseling certificates in these three cases.

20         THE COURT:  All right.

21         MS. DURHAM:  Anything else — okay.

22         THE COURT:  Anyone have any questions for Mr. Perdue?

23    Okay.  I do not.

24    Thank you, Mr. Perdue.

25         THE WITNESS:  Thank you.

1       (Witness excused.)

2              THE COURT:  Anything else from anyone?

3       (No audible response.)

4              THE COURT:  Ricia, if you could approach the podium

5    again.

6              Darnell Keith Dodd, do you know him?

7              MS. RICIA DANIELS:  Yes, I do.

8              THE COURT:  Tell me about how you know him.

9              MS. RICIA DANIELS:  I've only met Mr. Dodd two times.

10   They were my tax customers, I think, from '10 through '12.

11             THE COURT:  You just happen to remember him —

12             MS. RICIA DANIELS:  No, I —

13             THE COURT:  — from —

14             MS. RICIA DANIELS:  — when she mentioned his name, I

15   knew who they were.

16             THE COURT:  You just happened to remember them from a

17   few years ago?

18             MS. RICIA DANIELS:  I can kind of remember a lot,

19   yeah.  I remember people very fast, I mean I remember like when

20   we talked six weeks ago.  So I mean I know who they are because

21   they're originally from Oklahoma.

22             THE COURT:  All right.  My Law Clerk pulled the Dodds'

23   bankruptcy paperwork while this testimony was going on.

24             MS. RICIA DANIELS:  Um-hum.

25             THE COURT:  And would it surprise you to know that in

*Status Conference*                                                                 44

1   their bankruptcy paperwork there's a question, number 19, "List

2   all bookkeepers and accountants who within two years immediately

3   before the filing of the bankruptcy case kept or supervised,

4   keeping books or accounts or records of the debtor," and they

5   listed Ricia's Convenience Tax Services, date services rendered

6   September 2013, and then X-a-t Tax, date services rendered

7   August 2014.

8          MS. RICIA DANIELS:  August '14, yeah.  Okay.  That's

9   why I said I remembered, I know who they are.

10         THE COURT:  Okay.  You said they came in two times

11  maybe in the two thous- —

12         MS. RICIA DANIELS:  Mr. Dodd came in twice.  I know

13  his wife more than him.

14         THE COURT:  Okay.

15         MS. RICIA DANIELS:  Um-hum.

16         THE COURT:  So is this correct, that you gave them tax

17  services —

18         MS. RICIA DANIELS:  Yes.

19         THE COURT:  — in 2013 and in 2014?

20         MS. RICIA DANIELS:  '13 — '10 through — yes.  '10

21  through '13.

22         THE COURT:  But you have no idea why he would have the

23  same number on his credit counseling certificate as you?

24         MS. RICIA DANIELS:  No, ma'am, I don't.  And I

25  actually — I want to show you where I paid for my credit

*Status Conference*                                                                45

1   counseling services, because I know how much it was and

2   everything.

3           THE COURT:  All right.

4           MS. RICIA DANIELS:  I paid $30 and I paid it —

5           THE COURT:  Well, let me — let me just kind of wrap

6   this up.  Why — tell me again why did you file bankruptcy?

7           MS. RICIA DANIELS:  Well, when the moratorium — when

8   we talked six weeks ago, the moratorium on the home health, I

9   had got approved January the 30th, 2012 for Elite Services Home

10  Health for the Medicare.  And the next day there was a

11  moratorium hold for Dallas County.  So that mean all the

12  patients that I seen and the nurses that I had on staff, I had a

13  doctor, I had to pay it was like maybe a total of six months of

14  seeing patients for free, a hundred —

15          THE COURT:  Well, what are you talking about?  You

16  said there was —

17          MS. RICIA DANIELS:  No.  You said why did I file —

18          THE COURT:  — you said there was one child, you said

19  there was one child?

20          MS. RICIA DANIELS:  Yes.  There was one child that —

21  for pay, but there was seven.  Before you get approved for home

22  health, you have to see indigent cases.  And, see, let me go

23  ahead and explain.  Before you get approved for a home health

24  service, the license that you mention, you have to seek service

25  for free.  So I had to see patients where I paid nurses —

1          THE COURT:  Okay.  Okay.  So the answer to my question

2    why you filed bankruptcy, —

3          MS. RICIA DANIELS:  Why did I, yeah.

4          THE COURT:  Um-hum.

5          MS. RICIA DANIELS:  Because of the amount of money

6    that I spent on starting the home health.  The total of how much

7    money was like 250,000 total, for a whole year.

8          THE COURT:  Where did you get that $250,000?

9          MS. RICIA DANIELS:  From when I had money from when I

10   ran the tax office and the other businesses.  That's what I'm

11   saying.  When I got —

12         THE COURT:  You had $250,000 in savings?

13         MS. RICIA DANIELS:  At one time I had like 350,000,

14   from 2009 through 2012.

15         THE COURT:  Okay.

16         MS. RICIA DANIELS:  And everything —

17         THE COURT:  I'm not talking about that.  I'm talking

18   about — I asked you why did you file bankruptcy.

19         MS. RICIA DANIELS:  Yes.

20         THE COURT:  And you said it's because you had to go

21   out of pocket, —

22         MS. RICIA DANIELS:  Yes.

23         THE COURT:  — without any income coming in —

24         MS. RICIA DANIELS:  Exactly.

25         THE COURT:  — related to this healthcare business?

*Status Conference*                                               47

1        MS. RICIA DANIELS:  Yes.

2        THE COURT:  Are you saying you went out of pocket

3   $250,000 this year?

4        MS. RICIA DANIELS:  No, not this year.  I thought you

5   meant like why am I filing —

6        THE COURT:  But you said you started the home

7   healthcare business this year?

8        MS. RICIA DANIELS:  No.  I started the home healthcare

9   — I got approved in '12, 2012, and we were under a moratorium

10  hold.  Can I — let me — I know you're —

11       THE COURT:  What — what are your debts?

12       MS. RICIA DANIELS:  Oh, the storefront that I put on

13  the bankruptcy, Alpha Road.  I owe them about thirty —

14       THE COURT:  Okay.  Just list out — I'm trying to

15  figure out why you filed bankruptcy.

16       MS. RICIA DANIELS:  Um-hum.  Okay, okay.  This is

17  what —

18       THE COURT:  You had about three leases, one which you

19  entered into right before filing bankruptcy with Cirque.

20       MS. RICIA DANIELS:  Yes.

21       THE COURT:  Okay.

22       MS. RICIA DANIELS:  And then my DeLayne lease, where I

23  live at.

24       THE COURT:  Yeah, three leases.  Okay, what else?

25       MS. RICIA DANIELS:  Car — two cars, my daughter's car

*Status Conference*                                                48

1   and my car.

2           THE COURT:  Which you bought, —

3           MS. RICIA DANIELS:  I paid —

4           THE COURT:  — your schedule said in May 4th, 2015?

5           MS. RICIA DANIELS:  Yes.

6           THE COURT:  So you bought them —

7           MS. RICIA DANIELS:  Right before — I bought —

8           THE COURT:  You bought them eight days before you

9   filed bankruptcy?

10          MS. RICIA DANIELS:  '14.  This is '15.

11          THE COURT:  Okay.  So you — that was a mistake on your

12  bankruptcy schedules?

13          MS. RICIA DANIELS:  There was a '15 on bankruptcy for

14  the Audi?  It should be '14.  I didn't buy any vehicles this

15  year.

16          THE COURT:  So during this period when you weren't

17  making any money in 2014 you bought two new vehicles?

18          MS. RICIA DANIELS:  Yes, — well, I was doing —

19          THE COURT:  How did you do that?

20          MS. RICIA DANIELS:  — the flowers.

21          THE COURT:  Okay.  Your bankruptcy paperwork says you

22  had no income, zero for two years.  In your — in your bankruptcy

23  paperwork, your Statement of Financial Affairs, Questions 1 or 2

24  — 1 and 2, you say you've had no income the past two years

25  except for Social Security and child support —

*Status Conference*                                                                      49

1          MS. RICIA DANIELS:  And child support.

2          THE COURT:  Was that incorrect?

3          MS. RICIA DANIELS:  That's incorrect.  That's

4    incorrect for two years.  I don't — I'm going to have to look

5    that over because I could have swore that I put down for a year.

6    I didn't put — I mean if I could get a copy —

7          THE COURT:  You don't mention — you don't mention the

8    healthcare business, you don't mention the flower business, and

9    you say you've had no income for two years —

10         MS. RICIA DANIELS:  The flower business was my

11   daughter's, so I didn't mention that on my business.  But maybe

12   I didn't put Elite Service Home Health, but if you look at the

13   bankruptcy filing, I chose healthcare on my bankruptcy filing.

14   And, I mean, that is why I'm in bankruptcy, due to the

15   healthcare.

16         THE COURT:  If I were to let you go forward in your

17   bankruptcy, —

18         MS. RICIA DANIELS:  Yes, ma'am.  I need to have my

19   schedules correct because they're not right.

20         THE COURT:  — we have a lot of problems.  We have a

21   lot of problems.

22         MS. RICIA DANIELS:  Um-hum.  And this is the first

23   time in my whole life I ever filed bankruptcy.  Believe me, I

24   didn't want to, but I didn't have a choice at the time.

25         THE COURT:  This doesn't add up, none of it adds up.

*Status Conference*                                                                 50

1          MS. RICIA DANIELS:  It doesn't show where I put —

2   chose healthcare on the form —

3          THE COURT:  It does show that you checked healthcare.

4          MS. RICIA DANIELS:  Um-hum.  And I could have swore I

5   put —

6          THE COURT:  But you don't —

7          MS. RICIA DANIELS:  — Elite Service Home Health

8   Agency.  And if you call the State, they would tell you the same

9   thing, that I got the contract in December and this is the —

10          THE COURT:  Okay.  Let me — let me just go through

11   this with you.

12          MS. RICIA DANIELS:  Um-hum.  Yes, ma'am.

13          THE COURT:  The second blank on the petition, all

14   other names used by the debtor in the last eight years, include

15   married, maiden, and trade names, nothing.

16          Okay.  Your boyfriend has Little Dove Pediatric, Home

17   Health.  Okay.

18          MS. RICIA DANIELS:  And, ma'am, when I put on my

19   bankruptcy, I couldn't afford a lawyer, so there was problems on

20   mine that I wasn't really familiar with.

21          THE COURT:  Mr. Paz, how much was the monthly lease on

22   the apartment that they —

23          MR. PAZ:  The monthly rent, Your Honor, is $1,842.

24          THE COURT:  You got a lot of money for a lot of

25   things.

1          MS. RICIA DANIELS:  That's for DeLayne.

2          THE COURT:  No, that's for the Cirque.  What was the

3  DeLayne lease —

4          MS. RICIA DANIELS:  Now with Cirque —

5          THE COURT:  What was the DeLayne lease?

6          MR. PAZ:  One thousand seven hundred and fifty

7  dollars, Your Honor.

8          THE COURT:  You got a Land Rover —

9          MS. RICIA DANIELS:  At one time I had money, Your

10 Honor.  And I'm so sorry that — I mean I got in a predicament

11 with the getting in the healthcare where I lost a lot of money

12 because I had to get certifications.  I had to pay for CHAPS to

13 come in and —

14         THE COURT:  On your — there's a lot of places to

15 disclose all that in the bankruptcy paperwork and it's never

16 disclosed.  Okay.  I'm looking at your Schedule B.

17         MS. RICIA DANIELS:  Um-hum.

18         THE COURT:  Stock and interest in incorporated and

19 unencumbered — unincorporated businesses, none.

20         MS. RICIA DANIELS:  It's a DBA still, Elite Service

21 Home Health Agency.

22         THE COURT:  Well, you didn't put that under trade

23 names that you did business under —

24         MS. RICIA DANIELS:  I'm sorry.  I didn't even know

25 what that — I was thinking that just where my last name was to

*Status Conference*                                                    52

1    go.

2              THE COURT:  You did put actually besides the Social

3    Security and child support, $480 for sales of perfume online.

4              MS. RICIA DANIELS:  Um-hum.

5              THE COURT:  All right.  Does anyone have anything else

6    to say before I —

7              MS. RICIA DANIELS:  And can I say where the perfume

8    came from?  The perfume came from when my daughter had the

9    flower shop.  We had perfume that would go into gift baskets,

10   and so that's what I did, sold it online.

11             THE COURT:  All right.  I think the only thing I can

12   do here —

13             MS. RICIA DANIELS:  Yes, ma'am.

14             THE COURT:  — is to issue an order to show cause why

15   all these three cases should not be dismissed for bad faith,

16   which is inherent in many case irregularities.  Number one, what

17   appears to be forgery or some sort of falsification on all three

18   debtors' certificates of credit counseling.  Second, material

19   omissions in the sworn Statement of Financial Affairs and

20   schedules, including what appears to be omission of income,

21   omission of DBAs or other information regarding businesses of

22   you.

23             Again, just to be clear, Ricia, your Schedule I shows

24   you as self-employed for Elite Service Center, 13612 Midway

25   Road, Suite 355, —

*Status Conference*                                                                 53

1          MS. RICIA DANIELS:  Yes, ma'am.

2          THE COURT:  — for four years, but again you show no

3     income from this or anything other than —

4          MS. RICIA DANIELS:  My bank statement that I put on

5     there is —

6          THE COURT:  Well, we haven't even gotten into your

7     bank statements.

8          MS. RICIA DANIELS:  Okay.  But I was going to say that

9     shows everything —

10         THE COURT:  But your bank statements show a lot of

11    money coming in, for someone who put zero income in Questions 1

12    and 2 on the SOFAs.

13         So, anyway, we have irregularities, including missing

14    information about businesses and income.  We have a failure to

15    appear though ordered by the Court at good addresses for Mr.

16    Olajuwon.  And we have what appears to be a very troubling

17    situation with a 19-year-old filing bankruptcy I think as a

18    proxy and at bad advice from her mother.  I am just shocked and

19    appalled about a 19-year-old filing bankruptcy, I guess, to take

20    the fall for her mother, I don't know.

21         Ms. Durham, I'm going to ask you to be the scrivener

22    on a show-cause order why all these three cases should not be

23    dismissed for the reasons stated by the Court.  And if you want

24    to actually submit it in Word draft to my Courtroom Deputy in

25    case I want to tweak with it some, that would probably be a good

*Status Conference*                                                          54

1    idea, and coordinate with Ms. Davis.

2            We'll set a show-cause hearing 30 days down the road.

3    This will be so that if you or your daughter or your boyfriend

4    want to show up and tell the Court anything you feel like you

5    didn't get to tell me, you can, —

6            MS. RICIA DANIELS:  Okay.

7            THE COURT:  — but unless you convince me otherwise I'm

8    going to dismiss all three of your cases with prejudice to

9    refiling for a two-year period in light of what appear to be

10   very concerning circumstances.

11           MS. RICIA DANIELS:  So you said 30 days —

12           THE COURT:  Among other things, I'm worried about you

13   violating — was it — Judge Solis' order not to engage in tax

14   services.  What do you think he would say about your 19-year-old

15   daughter with no training now having a tax business, from all

16   the information she learned from her mother?  Do you think that

17   passed the smell test?  It does not.

18           All right.  Any questions?

19           MR. BONE:  Your Honor, in light of your rulings, —

20   Robert Bone on behalf of DeLayne — we have set our own motion to

21   lift stay on behalf of DeLayne, I believe, for September 17th.

22   Do your rulings today affect your thinking at all in terms of

23   having that hearing on — a preliminary hearing on the 17th?

24           THE COURT:  Well, you technically have to go through

25   your proof, and I —

*Status Conference*                                                 55

1        MR. BONE:  Yes, Your Honor.

2        THE COURT:  — haven't even looked at your papers yet.

3        MR. BONE:  Yes, Your Honor.  No, I understand.

4        THE COURT:  And she technically gets to respond.

5        MR. BONE:  Yes, Your Honor.

6        THE COURT:  But — so we'll have a hearing that day.

7        MR. BONE:  Yes, Your Honor.

8        THE COURT:  All right.  Court is adjourned.

9        THE CLERK:  All rise.

10     (The hearing was adjourned at 3:02 o'clock p.m.)

11                          —o0o—

12

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California          )
                             )      SS.
County of San Joaquin        )


            I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of Texas, Office of the Clerk, of the proceedings taken on the date and time previously stated in the above matter.

            I further certify that I am not a party to nor in any way interested in the outcome of this matter.

            I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate Nos. CER-124 and CET-124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated May 23, 2016